IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

      v.                                                                                 21-CR-6134-CJS

RAYMOND HARDY,

           Defendant.
_____

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Matthew T. McGrath, Assistant United States Attorney, hereby makes and files its sentencing memorandum relating to the defendant, RAYMOND HARDY.

        **I.**       **FACTUAL AND PROCEDURAL BACKGROUND**

**A.**     **Procedural History**

On October 21, 2020, a criminal complaint (20-mj-0754) was filed, which charged the defendant, Raymond Hardy, with Unlawful Dealing of Firearms, in violation of Title 18, United States Code, Sections 922(a)(1)(A) and (2), and Conspiracy to Commit Offenses Against the United States, in violation of Title 18, United States Code, Section 371.

The defendant made his initial appearance before the Hon. Mark W. Pedersen, Magistrate Judge for the Western District of New York, on October 22, 2020.

On September 23, 2021, pursuant to a written plea agreement, the defendant pled guilty to a one-count Information, which alleged that between in or about April 2020, the exact date being unknown to the United States Attorney, and continuing thereafter up to and including on or about July 3, 2020, in the Western District of New York, the defendant, Raymond Hardy, not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully and unlawfully engage in the business of dealing firearms, all in violation of Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1)(D) and 2.

The plea agreement provided for alternative calculations depending on whether or not the Court finds that U.S.S.G. § 2K2.1(b)(5) applies given the facts in this case. The government maintains that the four (4) level increase for firearms trafficking should apply resulting in an adjusted offense level of 19. The defendant maintains that the four (4) level enhancement should not apply, resulting in an adjusted offense level of 15. The Pre-Sentence Investigation concurs with the defendant's position, that the four (4) level enhancement should not apply, but beyond this issue the parties' and probation's Pre-Sentence Report are in agreement. According to the government's calculations, which includes the aforementioned four (4) level enhancement, the defendant's advisory sentencing range under the Sentencing Guidelines is 33 to 41 months' imprisonment. On the other hand, according to the defendant's and probation's calculations, the defendant's advisory sentencing range under the Sentencing Guidelines is 21 to 27 months' imprisonment.  Additionally, the plea agreement provides that both parties have reserved the right to argue for a sentence outside the applicable Sentencing Guidelines range.

## SUMMARY OF RELEVANT CONDUCT

Pursuant to the plea agreement the defendant admitted to the following facts:

a. The defendant, **RAYMOND HARDY**, admits and agrees that he is not, and never has been, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code.

b. Between in or about the month of April 2020, and on or about July 3, 2020, in Monroe County, in the Western District of New York, and elsewhere, the defendant did knowingly, willfully and unlawfully engage in the business of dealing in firearms without a license. During that time, the defendant sold multiple firearms and rounds of ammunition to individuals in Rochester in exchange for United States currency. The defendant agrees that based on what he knew about his primary customers, he knew or had reason to believe that his conduct would result in the transport, transfer or disposal of two or more firearms to another individual or individuals, whose possession or receipt of these firearms would be unlawful.

c. The defendant's relevant conduct includes the sale of six (6) firearms to a Confidential Source (CS) on two different dates in the month of June 2020. Both of these transactions took place in Rochester. More specifically, during the controlled-buy operations in June 2020, the defendant sold to the CS the following firearms: one (1) Glock 19 semiautomatic pistol, bearing serial number WCG395; one (1) Glock 43X semiautomatic pistol, bearing serial number BNUS942; one (1) Ruger model SR40 semiautomatic pistol, bearing serial number 344-08471; one (1) Diamondback Arms Model DB-15 rifle, bearing serial number DB2424571; one (1) Smith & Wesson Model M&P 15-22 rifle, bearing serial number JAF3244; and one (1) CZ Model CZ52 pistol, bearing serial number AZ1344. All of these firearms were sold to CS in exchange for United States currency.

d. The defendant's relevant conduct also includes seven (7) firearms recovered during the execution of a search warrant for the vehicle the defendant was traveling in on July 3, 2020. On that date the defendant was stopped by members of the Rochester Police Department while traveling in a gray Nissan Altima, bearing Mississippi license plate number WRC9346 (hereafter the "Altima"). Co-defendants Hakeem Miller and Jahbri Shelton were also present in the Altima when it was stopped by police. The defendant and Miller had advised the CS during the second of the two June 2020 controlled-buy operations described above, that they intended to make a trip to Mississippi to obtain more firearms in approximately one weeks' time. As such, law enforcement had been tracking the group's travel, anticipating that they would be transporting additional firearms to unlawfully sell in Rochester. A

search warrant for the Altima was obtained and law enforcement recovered a total of seven (7) firearms from within, along with a number of magazines, rounds of ammunition and other gun parts. The defendant admits and agrees that he, along with his co-defendants, brought these firearms to Rochester in order to unlawfully sell them to others. The firearms recovered are described as follows:

    i.      one (1) Kel-Tec CP33 .22 caliber pistol, bearing serial number M4E30;

    ii.     one (1) Stoeger STR-9, 9mm semiautomatic pistol, bearing serial number T6429-20U05074;

    iii.    one (1) Stoeger STR-9, 9mm semiautomatic pistol, bearing serial number T6429-20U05081;

    iv.    one (1) Smith and Wesson SD40VE, .40 caliber pistol, bearing serial number FWR2776;

    v.     one (1) Taurus G2c, 9mm semiautomatic pistol, bearing serial number TLU21231;

    vi.    one (1) Ruger SR9C, 9mm semiautomatic pistol, bearing serial number 336-53179;

    vii.   one (1) American Tactical Omni-Hybrid MZXX AR-15, .223 caliber rifle, bearing serial number NS245218, which was reported stolen by the Greenville Mississippi Police Department on or about April 8, 2020.

f.    The defendant admits and agrees that at least eight (8) firearms but less than twenty-five (25) firearms is the number of firearms involved in the defendant's relevant conduct encompassed in the Information, which could be readily proven by the government at trial or at a sentencing hearing.

The above facts are set forth for the limited purpose of complying with Rule 11(b)(3) and are not intended to serve as a complete statement of the defendant's criminal conduct.

## THE APPLICABILITY OF GUIDELINES SECTION 2K2.1(b)(5)

Pursuant to U.S.S.G. § 2K2.1(b)(5) "If the defendant engaged in the trafficking of firearms, increase by 4 levels." Application Note 13 of the Guidelines provides as follows: "(A) In General. – Subsection (b)(5) applies, regardless of whether anything of value was exchanged, if the defendant –

> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and
>
> (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual –
>
>> (I) whose possession or receipt of the firearm would be unlawful; or
>> (II) who intended to use or dispose of the firearm unlawfully."

Based on the factual basis set forth in the Plea Agreement, the defendant has clearly satisfied prong (i) of the application note, in that he "transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual."

The government submits that prong (ii) is also satisfied in that the defendant either knew *or had reason to believe* that his conduct would result in the transport, transfer, or disposal of a firearm to an individual, "(I) whose possession or receipt of the firearm would be unlawful; or (II) who intended to use or dispose of the firearm unlawfully." In the defendant's voluntary statement he admitted that he and his co-defendants were selling firearms, in bulk, to repeat customers. The defendant was aware of the fact that the firearms the group sold were obtained out of state, typically at retail gun stores. The defendant indicated that he personally would profit approximately $700 to $1,500 for transporting a shipment of firearms from Mississippi to Rochester.

To put a finer point on this argument, the defendant's customers were buying firearms in bulk at above retail prices. Logic dictates that if these customers could have lawfully obtained these firearms themselves at a retail firearms store, they would have done so. Instead, these individuals were obviously forced to turn to the black market for firearms, which in this case was a makeshift tent, in the backyard of a home on Jewel Street. Given these circumstances, the defendant reasonably should have known that the individuals he was selling firearms to were persons whose possession or receipt of the firearms would be unlawful and/or who intended to use or dispose of the firearms unlawfully. The government acknowledges that the specific definition of an individual "whose possession or receipt of the firearm would be unlawful" is fairly specific.

The government also submits that the defendant knew or had reason to believe that his customers were individuals who intended to use or dispose of the firearms unlawfully. The fact that these individuals were repeat customers purchasing firearms at essentially scalper rates should have raised alarm bells in a reasonable person's mind, that these individuals intended to use or dispose of the firearms unlawfully. There is nothing particularly rare or special about the firearms the defendant and his co-defendants were selling. In other words, they are not collector's items. They are commonplace firearms easily attainable at retail. Nevertheless, several of the defendant's customers would repeatedly purchase these firearms from the defendants at elevated prices. It is a reasonable inference that these customers were purchasing these firearms from the defendants with the intent to then further distribute or sell the firearms themselves, presumably at an even higher price. Otherwise what purpose would they have in repeatedly purchasing firearms at elevated prices. The defendant's customers were obviously not Federal Firearms Licensees or otherwise lawfully able to engage in the business of dealing in firearms. If they were, presumably they would

have obtained the firearms in bulk from a firearms manufacturer or legitimate firearms distributor, at prices much more favorable than the defendant's black-market rates.

Logically, if these customers of the defendant's customers are paying even higher prices for the firearms, these are also not folks that could otherwise obtain firearms lawfully. These are individuals willing to pay a premium for common, readily attainable firearms. If they were able to obtain firearms lawfully, logic suggests they would simply obtain these firearms through legitimate firearms dealers, where they would be properly vetted through background examinations. Given these circumstances, a reasonable person should conclude that the defendant's customers were also engaged in the unlawful dealing or distribution of firearms, satisfying prong (ii)(II) of Application Note 13.

In summary, the defendant knew what he was doing. He was engaged in the black market of firearms trafficking to turn a profit. Therefore the Court should apply the four (4) level increase pursuant to U.S.S.G. § 2K2.1(b)(5).

## II.   STATUTORY SENTENCING FACTORS

The government asks the Court to impose a sentence within the Sentencing Guidelines range of 33 to 41 months' imprisonment. The government submits that such a sentence is appropriate and would not be "greater than necessary" to comply with the objectives set forth in Title 18, United States Code, Section 3553(a).

Title 18, United States Code, Section 3553(a) requires that the Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." In determining the sentence, the Court must consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for–

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

. . .

(5) any pertinent policy statement–

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In executing these statutory responsibilities, the Court must first correctly calculate the applicable Guidelines range. Gall v. United States, 552 U.S. 38, 49 (2007). This range is "the starting point and the initial benchmark." Id. Although this Court must treat the Guidelines as advisory, United States v. Ratoballi, 452 F.3d 127, 131-32 (2d Cir. 2006), an error in determining the applicable Guidelines range or the availability of departure authority nonetheless would be the type of procedural error that could render a sentence unreasonable on appellate review. United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005). Further, while this Court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," Rita v. United States, 551 U.S. 338, 351 (2007), the Second Circuit has observed that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be [upheld as] reasonable in the particular circumstances." United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006). See also United States v. Eberhard, 525 F.3d 175, 179 (2d Cir. 2008). Next, after giving the parties an opportunity to argue for whatever sentence they deem appropriate (consistent with any limitations imposed by the plea agreement), this Court must then "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party." Gall, 552 U.S. at 49-50. In determining whether the § 3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented." Id. at 50. In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. If a non-Guidelines sentence is warranted, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 552 U.S. at 50.

After settling on the appropriate sentence, the Court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id. (citing Rita, 551 U.S. at 351). Although this Court need not engage in "robotic incantations" with respect to its consideration of the § 3553(a) factors, Fernandez, 443 F.3d at 30, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." Rita, 551 U.S. at 356.

In this case, the crime committed by the defendant – unlawfully dealing in firearms – and the underlying facts, are quite serious and present a clear danger to the community. It is no secret that the City of Rochester is suffering from a plague of gun violence frequently perpetrated by individuals in possession of illegal firearms. The defendant's actions directly contributed to this problem in a significant fashion. The defendant's relevant conduct includes at least 8 but less than 25 firearms that he either unlawfully sold to individuals in Rochester, or had trafficked to Rochester for that very reason. By doing so the defendant sought to benefit himself financially without a care for anyone who might ultimately be harmed or killed by these illegal firearms.

The government submits that a sentence within the advisory guidelines range of 33 to 41 months' imprisonment, which is the range described in the plea agreement that includes the four (4) level enhancement for firearms trafficking, would be sufficient, but not greater than necessary to achieve the aims of Title 18, United States Code, Section 3553(a). It is particularly important in a case such as this that the Court impose a prison sentence sufficient to deter others from engaging in similar activity. Otherwise the economic benefits of trafficking these illegal weapons into our community may be too tempting for others to ignore.

A prison sentence within this range would send a message to others seeking to engage in the unlawful dealing of firearms that such conduct will not and cannot be tolerated, and will help to ensure the safety of our community.

### III.  CONCLUSION

Based on the foregoing, the government respectfully recommends that the Court impose a sentence of 41 months' imprisonment.

DATED:  Rochester, New York
December 13, 2021

Respectfully submitted,

TRINI E. ROSS
United States Attorney
Western District of New York

BY:  s/MATTHEW T. MCGRATH
Assistant U.S. Attorney
Western District of New York
100 State Street, Suite 500
Rochester, New York
(585) 399-3965
matthew.mcgrath@usdoj.gov

TO:  Wendy W. Abdallah, Esq.
Counsel for Defendant

United States Probation Department
Attn: Jacquelyn D. Finucane
U.S. Probation Office